## THE TOWN OF WHEATLAND AND SIX OTHER · TOWNS *v.* HENRY A. TAYLOR AND OTHERS.

*Municipalities cannot aid railroads — Constitution, art. 8, sec. 2, and art. 3, sec. 16 — 1876, chap. 66, sec. 2 — a bond authorized by a statute must comply with its terms — when a sum named in a bond is to be treated as a penalty, and not as liquidated · damages.*

Section 2 of chapter 66 of 1876 authorized and empowered the commissioners of any municipal corporation in this State holding bonds, given by the Rochester and State Line Railroad Company in exchange for the bonds of such municipality, to sell and dispose of such bonds, " upon such terms and conditions as to said commissioners, or a majority of them, shall be deemed best for the interest of said municipal corporation they represent, whenever said railway company shall have entered into a written contract for the completion and equipment of said railroad from Rochester to Salamanca, and the contractor shall have given to the city of Rochester the guaranty required by the first section of this act, and said commissioners may, in their discretion, require a like guaranty, to be approved by them or a majority of them." The first section required a guaranty to be given by the contractor, " that said railroad shall be ready for operation and equipped by the 1st of January, 1877."

Under this act the plaintiffs exchanged with the railroad company the first mortgage bonds they held for an equal amount of its common stock. They also received from the defendants a bond, in the sum of $100,000, conditioned that the contractor should complete and equip the road from Rochester to Salamanca by July 1, 1877.

*Held,* that in so far as the act authorized the exchange of the bonds for the stock of the company, it was unconstitutional and void, as being in violation of section 2 of article 8 of the Constitution.

That the portion of the act authorizing the taking of the guaranty could not be separated from the portion providing for the sale and disposition of the bonds.

*It seems,* that even if it could be considered as separate and independent, it would bring the act in conflict with section 16 of article 3 of the Constitution, providing that no private or local bill shall embrace more than one subject, and that that shall be expressed in its title.

It was recited in the bond that, " *Whereas,* it is of great value to the said towns and the citizens that such road should be finished and put in operation, and the damages resulting from a failure therein, and from the said towns having parted with their said bonds, would be very great, and it would be impossible to ascertain the amount of damages resulting from the non-completion of said road, or to accurately estimate and prove the elements thereof," the sum of $100,000 was declared to be fixed as the liquidated damages which the towns might suffer from a breach of the condition of said bond, and not to be a penalty. The work was not finished by July 1, 1877, but the contractor, without the objection of any person, continued to work up to October, 1879, when only the sum of $4,787.46 was required to complete the road.

In an action to recover the amount named in the bond :

*Held,* that under the act the plaintiff could only take the guaranty therein provided for, and had no authority to take a bond such as was now sued upon.

That under the terms of the bond and the circumstances of the case, the sum named in the bond should be treated as a penalty and not as liquidated damages.

CROSS-APPEALS from a judgment, entered upon the trial of this action at a Circuit and Special Term held in Wyoming county in October, 1881.

The plaintiffs are towns lying along the line of what was formerly known as the Rochester and State Line Railroad, for the building of which railroad the towns had bonded themselves in the aggregate amount of $505,000. Under the act of the legislature (chapter 66 of the Laws of 1876), the plaintiffs exchanged with the railroad company the first mortgage bonds which they held, for an equal amount in the common stock of the railroad. The defendants, on the 30th of August, 1876, made and executed to the plaintiffs a bond in the sum of $100,000, the condition of which was that the contractor, the defendant Taylor, should complete and equip the road from Rochester to Salamanca by the first day of July, 1877, in conformity to his contract. Only a quarter of the work had been done, however, by the first day of July, 1877, but, without objection on the part of any person, the contractor continued to work up to the first day of October, 1879, when, as it is ascertained by the decision of the case, the sum only of $4,787.46 was necessary to complete the building and equipment of the road. This action was brought by all of the towns who were parties to such agreement, to recover the amount provided for by said bond upon a general allegation of a breach thereof by the defendants.

*John R. Olmstead, Lucius N. Bangs* and *L. W. Thayer,* for the plaintiffs.

*William F. Cogswell* and *J. & Q. Van Voorhis,* for the defendants.

MACOMBER, J. :

The act of the legislature authorized the railway commissioners of the several towns to take a guaranty for the faithful execution of the contract which the contractor for the building of the road had made. The contract, for the breach of which this action is

brought, after reciting the contract of the defendant, Taylor, with the corporation and a reference to the act of the legislature, by way of recital has the following provision, among others : " *Whereas*, it is of great value to the said towns and the citizens that such road should be finished and put in operation, and the damages resulting from a failure therein and from the said towns having parted with their said bonds would be very great, *and it would be impossible to ascertain the amount of damages resulting from the non-completion of said road, or to accurately estimate and prove the elements thereof.*" The obligation thence binds the defendants to the plaintiffs in the sum of $100,000, which sum was declared to be fixed as the liquidated damages which the towns might suffer from a breach of it, and was declared not to be a penalty.

It was claimed by the plaintiffs counsel upon the trial as well as upon the argument on appeal, that the measure of damages for a breach of the contract had been fixed and determined by the parties to the agreement at a liquidated sum of $100,000, and that the plaintiffs were entitled to recover that sum, although the actual damages to the plaintiffs, as found by the trial judge, were quite small in view of the magnitude of the undertaking. This contention cannot be acceded to and it was properly rejected by the trial court. Among the numerous authorities upon this precise question, perhaps the case of *Shute* v. *Taylor* (5 Metc., 61) is most nearly in point. There, the court, by Chief Judge Shaw, says: " It is not always the calling of a sum, to be paid for breach of contract, liquidated damages, which makes it so. In general, it is the tendency and preference of the law to regard a sum stated to be payable if a contract is not fulfilled, as a penalty and not as liquidated damages, because then it may be apportioned to the loss actually sustained. But without going at large into the subject, one consideration, we think, is decisive against recovering the sum in question as liquidated damages; namely, that there has been a part performance and an acceptance of such part performance. * * * It is like the case of an obligation to perform two or more independent acts with a provision for single liquidated damages for non-performance ; if one is performed and not the other, it is not a case for the recovery of the liquidated damages."

Under the proofs in the case all of the commissioners of the several

towns had knowledge of the progress of the work from time to time, and they and other town officers at least acquiesced in the expenditure by the contractor of many hundred thousand dollars after the time of the occurrence of the breach complained of, without any suggestion or intimation that they should stand upon the letter of their bond. Under such circumstances and in view of the very slight sum which the court has found. was necessary to make good even a technical compliance with the agreement, it would be a step far in advance of the present judicial authorities for us to hold that the $100,000 could be recovered simply because the language of the contract said it had been fixed upon by the parties. We therefore concur fully in the conclusion of the trial judge upon this branch of the case.

The learned judge below, however, has stated a measure of damages in this case to which we cannot give our assent. He has decided that the plaintiffs are entitled to recover a sum of money, which, on a given day, namely, the 1st day of October, 1879, after which date the contractor did no service and expended no money, was then necessary to complete the construction of the railroad according to his contract. The items which enter into this sum are four hand-cars, a sum to be expended on depots and the estimated cost of a water station, and a pumping engine at another station, the aggregate of which amounts to the sum of $4,787.46. This doubtless would be the correct measure of damages provided the towns through which the railroad was constructed were, as the result of the execution of the contract, to receive the road and operate it for their own pecuniary advantage as the managers of a common carrier, but manifestly neither of these towns had any such proprietory rights in the railroad or in the contract for its construction. It is not necessary for us to determine upon this appeal what evidence should be adduced to establish the facts that the plaintiffs had suffered any injury whatever from the failure to build the road. What advantage it would be to the towns, as separate political divisions of the State, to have a railroad running through them, doubtless is a difficult subject for a judicial investigation, yet the difficulties of the case ought not to lead us to accept any other measure of damages than the pecuniary interest which these towns had in the operation of the railroad.

We think, therefore (except for the statement made by the counsel for the defendants upon the argument, and which was also incorporated in his brief, that he did not ask a reversal upon this ground), that we ought to set aside the judgment and order a new trial for this error alone.

There are, however, other reasons for a reversal of the judgment, which go to the merits of the plaintiffs' entire claim. By the act of the legislature, above referred to, upon surrendering the $505,000 of the first mortgage bonds of the corporation, and receiving in lieu thereof the common stock of the company, the commissioners, as has been stated, were authorized (not required) to receive, before making the same, a guaranty for the faithful execution of the contract for the construction of the railroad. The commissioners were not authorized by any law to insist upon a guaranty different in legal effect from the one which they were empowered to receive by the act; yet the document which furnishes the basis of this action is not a guaranty in the legal acceptation of that term. Indeed, it recites the difficulties which would attend the ascertainment of the actual damages by the towns in case a mere guaranty were executed. They have, therefore, apparently insisted that before this exchange should take place, a different instrument should be executed to them which should supply the defects in the legislation and secure them in obtaining the railroad. To recover upon a bond authorized by the statute, it must be made to appear that the paper is substantially in accordance with the terms of the authority from which it is to derive its validity. (*Barnard* v. *Viele*, 21 Wend., 88; *Joslyn* v. *Dow*, 19 Hun, 494; *Town of Wayne* v. *Sherwood*, 14 id., 423; S. C., 76 N. Y., 599.)

Still there is another and a more important reason why this action cannot be maintained, and that is, that the act of the legislature permitting the transfer, as well as the contract itself making the change of the first mortage bonds the stock of the company, was, and is unconstitutional, being in violation of section 2 of article 8 of the Constitution, which declares that "no county, city, town or village shall hereafter give any money or property or loan its money or credit to or in aid of any individual, association or corporation, or become, directly or indirectly, the owner of stock in or bonds of any association or corporation," and which was adopted

in the year 1874, after plaintiffs had become the owners of the bonds and before they entered into the contract for exchanging them for stock. This was the subject of judicial decision in the case of the *City of Rochester* v. *Taylor and others*, which was an ·action to recover the value of the bonds of the same railroad company which had been exchanged for stock under the same act of the legislature. This case has not, so far as we are aware, been reported, but a copy of the opinion of Mr. Justice DAVID RUMSEY, delivered therein, has been furnished to, us. The court, in that case, pronounced the act of the legislature and all proceedings of the municipal corporation and of the railroad under it to be unconstitutional and void, and that neither party to the illegal agreement could maintain an action against the other for any cause arising under it. This decision was followed by the Circuit Court in Monroe county, in an action between the same parties for the recovery of the interest coupons which had been attached to the bonds which furnished the subject-matter of the first action. There has been no review of these decisions by appeal, and none has been attempted, so far as we are advised.

In regard to the decision of Mr. Justice RUMSEY, referred to by the trial court in this case, an attempt is made to discriminate between the cause of action here involved and that portion of the agreement which manifestly, under the Constitution, could not be carried into effect; and the learned judge says, in his opinion, that other covenants of a separate and independent nature may be enforced. But the error of this reasoning, as it seems to us, is in the assumption that there were in fact or could, from the nature of the case, be separate and independent covenants which could afford a basis of an action, when the entire project contemplated by the act of the legislature was itself subject to the inhibition of the provision of the Constitution. There is but one subject stated in the title of the act, which is " To authorize municipal corporations holding the first mortgage bonds of the Rochester and State Line Railway Company to sell and dispose of the same." There is no separate and independent subject named in the title of the act. The body of the act, it is true, has a provision permitting the railway commissioners of the several towns to receive a guaranty, but that is only an incident to the general subject of the legislation and

only one of the means and details pointed out for carrying the act into effect. Indeed, it might well be claimed that the contention for such a division of the act would be obnoxious to another section of the Constitution, which declares that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." (Art. 3, sec. 16.)

It follows, therefore, that the judgment must be reversed and a new trial ordered.

SMITH, P. J., and HARDIN, J., concurred in the result.

Judgment reversed and new trial ordered, costs to abide the event.